87 569
131 159

THE STATE OF IOWA *ex rel.* JACOB PERINE *et al.*, Appellant, v. GEORGE VAN BEEK *et al.*, Appellees.

1. **Jurisdiction:** QUESTION OF: WHEN CONSIDERED ON APPEAL. Although an objection to the jurisdiction of the trial court is overruled, and such ruling is in favor of the plaintiff, and the defendant does not appeal, yet, upon an appeal by the plaintiff from the final judgment, this court will consider the question of jurisdiction, if suggested by its own examination or otherwise, since, without jurisdiction, a court is powerless to act.

2. ———: TO TRY TITLE TO OFFICE. Under section 3352 of the Code, which provides that "when several persons claim to be entitled to the same office * * * a petition may be filed against all or any portion thereof, in order to try their respective rights thereto," *held*, that the district court has jurisdiction to try the right of office as between two persons claiming to have been elected thereto, though the defendant is not yet in the possession of such office.

3. **Title to Office:** ALIENAGE: FRAUD IN CONCEALING: ANSWER. In an action by the defeated against the successful candidate for the office of sheriff, in which it was alleged that the latter was an alien, and therefore ineligible to the office, and that he had fraudulently concealed that fact from the electors, the defendant, in his answer, denied fraud, and alleged that he had been advised that his father was naturalized before he (the defendant) attained his majority; that he never had reason to doubt his citizenship until after the beginning of this action, and that, relying upon such information, he had exercised the rights of a citizen, and had served in the army of the United States. *Held*, that this portion of the answer was material in denial of the fraud charged by the plaintiff.

4. ———: OFFICE OF SHERIFF: ELIGIBILITY AS AFFECTED BY ALIENAGE. An alien can not hold the office of sheriff. If, however, an alien is elected to that office, and his disability is removed by naturalization prior to the time for his qualification, he will, upon qualifying, be entitled to the office. ROBINSON, C. J., and GRANGER, J., *dissenting* as to the last proposition.

5. ———: DELAY IN QUALIFYING: FACTS EXCUSING. Although, by section 685 of the Code, sheriffs are required to qualify by the first Monday in January following their election, yet, by section 687, they are allowed twenty days after the decision in case of a contest. Accordingly, where the plaintiff, by injunction, in a suit in the nature of a contest, prevented both the defendant and the board of supervisors from acting in the matter of the defendant's qualification as sheriff at the proper time, *held*, that the defendant was entitled to at least a reasonable time, if not the full twenty days, after the decision in his favor, in which to qualify.

*Appeal from Henry District Court.*—HON. W. I. BABB, Judge.

THURSDAY, FEBRUARY 2, 1893.

ACTION to determine the right to the office of sheriff of Henry county, Iowa, as between the relator Jacob Perine and the defendant George Van Beek, and for certain other relief. The jury being waived, the cause was tried to the court, and judgment entered "that plaintiff's bill herein be dismissed, and that defendant George Van Beek be authorized and empowered to hold said office of sheriff for the remainder of the time for which he was elected." The plaintiff appeals.—*Affirmed.*

*M. A. McCoid, Palmer & McCoid* and *Phillips & Day,* for appellants.

A person must be eligible to a county office at the time of the election. Under section 692, Code, one of the grounds for the contest of a county office by any elector is, "That he was not eligible to the office at the time of the election." We see a great difference in eligibility and a statutory disqualification, which may be removed. But to say that a foreigner, a citizen of the kingdom of Holland, is eligible to an office in Iowa, is too much. After the first Monday of January when the holding over incumbent had continued in office by

statutory appointment, as it were, nothing but the election and qualification of a successor could terminate his term. Many authorities are cited from other states and text-books but they do not seem to us to be in point. Our own statute and the logical sequences therefrom must govern.

*T. A. Bereman,  W. S. Withrow* and *R. Ambler & Son,* for appellees.

This is an action brought by one holding an office against one elected thereto, and about to enter upon the discharge of its duties. As a proceeding in the nature of *quo warranto* it is not warranted by the common law or our statutes. As an action in equity aided by injunction to try title to an office, it is a discovery; such proceedings heretofore not having been recognized by the courts. *Cochran v. McCleary,* 22 Iowa, 75; *District Township v. Barrett,* 47 Iowa, 110; *State v. Simpkins,* 77 Iowa, 676. If not such an action, it is then intended to be a *quo warranto* proceeding. The nature of such an inquiry is "by what warrant does one hold and perform the duties of an office?" "It is a writ of right, a civil remedy to try the mere right to the office, when the person in possession never had a right to it, or has forfeited it by neglect or abuse." 3 Blackstone's Com., 262, 263. It is the proper proceeding, the only one, in which to try title to an office, *People v. Olds,* 3 Cal. 167; *Commonwealth v. Dearborn,* 15 Mass. 125; *People v. Pease,* 27 N. Y. 45; Code, section 3645. To warrant bringing the action there must have been a user of the office by the defendant (*King v. Whitewell,* 5 Term Rep. 85) and his term of office should have commenced. *People v. McCollough,* 11 Abb. Pr., 129. There was no vacancy in the sheriff's office on the morning of January 5 as claimed by appellant. Code, sections 781, 784. The defendant

was not bound to qualify on the first Monday in January. Code, sections 680, 681, 687, 690; McClain's Code, section 1151. The law with reference to the time of qualifying for office is directory and not mandatory. *Kearney v. Andrews*, 10 N. J. Eq. 70; *State v. Colvig*, 15 Or. 57; *Ross v. Williamson*, 44 Ga. 501; *City of Chicago v. Gage*, 85 Ill. 593; *State v. Porter*, 7 Ind. 204; *State v. Churchill*, 41 Mo. 41; *State v. County Court*, 44 Mo. 230; *People v. Holley*, 12 Wend. 481; *Cronin v. Grundy*, 16 Hun, 520; *State v. Toomer*, 7 Rich. 216. To constitute an officer *de facto* and *de jure*, he must, *first*, be duly elected to the office, and, *second*, he must be a citizen of the United States and of the state and county, owing full allegiance to the government in all its branches, and owing no allegiance to any other government, prince, potentate or power. It has been repeatedly held that persons elected to office before naturalization, who were after such election, and before entering upon the duties of the office, naturalized, were entitled to hold and exercise the duties of such offices. *State of Wisconsin v. Trumpf*, 50 Wis. 103, 5 N. W. Rep. 876; *State v. Smith*, 14 Wis. 570; *State v. Murray*, 28 Wis. 96; *Privett v. Bickford*, 25 Kan. 52, 40 Am. Rep. 30; *State v. Moore*, 90 Ind. 284; 107 Ind. 374.

GIVEN, J.—I. The first question presented is that of jurisdiction. The appellees contend that neither

1. JURISDICTION: question of: when considered on appeal.

the district court nor this court has jurisdiction to hear and determine the cause as presented in the pleadings. A determination of this question requires that we state at some length the allegations of the plaintiff's bill. On January 4, 1892, that being the first Monday in said month, the plaintiff filed a bill stating that the relator Gillis was a resident citizen and elector of the county; that he voted at the general election in 1891

for the relator Perine, and is interested in the result of
this suit; that the county attorney was asked to bring
this action, and failed and refused to do so, whereupon
it is brought by a private individual. The petition
alleges, in substance, as follows: That the relator
Perine had held the office of sheriff of Henry county
for the preceding two years, and was then in possession
thereof, and entitled to hold the same until a successor
"legally eligible" was duly elected and qualified; that
he and the appellee Van Beek were opposing candidates
for said office at the general election in 1891; that Van
Beek received a majority of all the votes cast; that a
certificate of election had been issued to him, and that
he was about to present his bond to the defendant
board for approval, and to qualify as such sheriff, and
demand said office of the relator Perine; that said
George Van Beek was not a citizen of the state or of
the United States, for the reason that he was born in
the kingdom of Holland, and had never been natural-
ized under the laws of the United States, and was there-
fore "not eligible to the office at the time of his elec-
tion;" that he fraudulently concealed said facts, and
represented himself to be a citizen of the United States
and an elector of this state at the time of the election,
of the canvass of the vote, the issuing of the certificate,
and until after the expiration of the time for contest;
that the relator Perine received the highest number of
votes cast for any candidate eligible to hold said office,
but the board of canvassers, not knowing that said Van
Beek was ineligible, declared him elected. The prayer
is that the right to said office be determined; that
Jacob Perine be adjudged legally in possession of the
same, and entitled to hold the same until his successor
is elected and qualified; that George Van Beek be
adjudged ineligible thereto; that the action declaring
his election be canceled and declared void, and that
Jacob Perine be declared elected, and entitled to qualify

and to exercise said office after qualification; that the board of supervisors be commanded to issue a certificate of election to the relator Perine, and that the said board and the auditor be commanded to qualify and swear him in as such officer; that temporary injunction issue restraining the chairman of said board and said auditor from proceeding to qualify said Van Beek, and restraining Van Beek from qualifying and from further claiming said office until this cause is determined.

On presentation of said petition to Hon. W. I. Babb, judge, in chambers, he ordered that a temporary writ of injunction issue restraining Van Beek from exercising any of the duties and functions of said office "until information in *quo warranto* can be heard, upon the relators, James R. Gillis and Jacob Perine, filing a bond conditioned as by law." Bond being filed, the clerk on said fourth day of January issued a temporary writ of injunction in accordance with said order. On the same day the defendants appeared, and filed a motion to dissolve the injunction on the ground that the same was issued without authority of law, which motion was then submitted and overruled, and the court ordered the cause set down for hearing on the next day at 9 o'clock A. M. By this motion the defendants questioned the jurisdiction of the court. The overruling of the motion was favorable to the appellant, and, as the defendants have not appealed, he insists that the question of jurisdiction is not before this court. This court has uniformly held that it will recognize want of jurisdiction, even if no objection be made. *St. Joseph Manufacturing Co. v. Harrington*, 53 Iowa, 380; *Groves v. Richmond*, 53 Iowa, 570. Whenever a want of jurisdiction is suggested, by our own examination of the case or otherwise, it is the duty of the court to consider it, for if the court is without jurisdiction it is powerless to act in the case.

II.   The appellee contends, and correctly so, that
an action in equity aided by injunction will not lie to

2. ——: to try      try   title   to   an   office.   *Cochran v. Mc-*
title to office.   *Cleary,* 22 Iowa, 75; *District Township v.
Barrett,* 47 Iowa, 110; *State v. Simpkins,*
77 Iowa, 676.   The appellee also contends that the only
action authorized by chapter 6, title 20, of the Code, so
far as it relates to public offices, is against one holding
or exercising such office, and that, as he is not holding
or exercising the office in question, no action will lie
against him under said chapter.   He maintains that
this is an action to prevent him from taking and exer-
cising the office, and that no such action is provided
for by statute or common law, and therefore the court
is without jurisdiction.   Said chapter 6, in addition to
the actions against persons doing the things specified
in the first section, provides, in section 3352, as follows:
"When several persons claim to be entitled to the same
office or franchise, a petition may be filed against all or
any portion thereof, in order to try their respective
rights thereto, in the manner provided by this chap-
ter."   Herein the right to proceed against one claim ·
ing to be entitled to an office or franchise is clearly
given.   Here we have two persons claiming to be
entitled to the same office, and by this section authority
is given to try their respective rights thereto.   We are
in no doubt but that the court has jurisdiction over
this cause.

III.   On the fifth day of January, 1892, the
defendant filed a demurrer to the petition.   He also

3. TITLE to office:   filed  a  motion  for  permission  to  be  nat-
alienage:     uralized,  stating  that  he  was  born  in
fraud in con-
cealing:      Holland in 1834, emigrated with his par-
answer.       ents to the United States in 1847, and has
resided therein ever since, and for twenty-seven years
in Henry county; that in 1861 he volunteered in the
United States military service in the War of the Rebel-

lion, and was honorably discharged therefrom in 1866. The record shows that, upon proof being presented, he was duly naturalized on said fifth day of January, and that said demurrer was overruled. On the sixth day of January the defendant Van Beek answered, admitting that votes were cast at the general election as alleged, that he is a native of Holland, and that he was at the time of the election unnaturalized. He alleged that his father was naturalized in 1855; that he had been advised that his father had been naturalized before he (the defendant) attained his majority, and never until the commencement of this proceeding had reason to doubt that he was a citizen of the United States; and that, relying thereon, he had exercised the rights of a citizen since arriving of age. He then set out his service in the army, his naturalization on January 5, and alleged that immediately thereafter he filed his bond as sheriff, which was approved, and took the oath of office required by law. He denies all fraud, and prays that the injunction issued be dissolved, that he be declared to be the duly elected and qualified sheriff, and that the immediate possession and control of said office be granted to him. Plaintiff moves to strike out that part of the answer stating that the defendant relied upon information that his father was naturalized before the defendant became of age, that he exercised the rights of citizenship, and that he served in the army and was naturalized. This motion was properly overruled, as the matters set out were competent and material in denial of the fraud charged by the plaintiff.

IV. On January 6, 1892, the plaintiff filed a demurrer to the answer, as follows: *"First.* That said answer on its face admits the fact that defendant George Van Beek, was, at the time of his election, not a citizen of the United States and of the state of Iowa, and was so ineligible to said office.

4, ——: office of sheriff: eligibility as affected by alienage.

"*Second.* The answer admits on its face that defendant George Van Beek was not a citizen of the United States and of the state of Iowa, at the commencement of the term of office of sheriff of Henry county, under the statutes of the state of Iowa, and was ineligible to hold the office at that time.

"*Third.* It shows that, not being eligible at the time of the election and at the time of the commencement of the term of office, the office became vacant, and that the present incumbent (in office), by statutory appointment, holds over until a successor legally eligible to said office shall be elected and qualified.

"*Fourth.* Because no subsequent act can be retroactive, and so operate as to make defendant eligible at the date required by law.

"*Fifth.* The answer confesses all substantial allegations and equities of the petition, and shows defendant not entitled to the office claimed by him."

This demurrer was overruled on the same day, to which the plaintiff excepted. The answer admits that the appellee Van Beek was an alien at the time of his election, and that he remained such until January 5, 1892, when, as it is alleged, he was legally naturalized, and became a citizen of the United States and a qualified elector of Henry county. The question is whether these allegations, taken as true, show Mr. Van Beek qualified to hold the office of sheriff.

Our first inquiry is, whether an alien can hold the office of sheriff under the laws of Iowa. There is no provision in our constitution or statute upon that subject, yet it is certainly a fundamental principle of our government that none but qualified electors can hold an elective office unless otherwise specially provided. This precise question was passed upon in *State v. Smith*, 14 Wis. 497. Smith, an alien, who had been elected, was holding the office of sheriff without being naturalized. In speaking of our form of government the court

says: "As to all such governments it is an acknowledged principle which lies at the very foundation, and the enforcement of which needs neither aid of statutory nor constitutional enactments or restrictions, that the government is instituted by the citizens for their liberty and protection, and that it is to be administered, and its powers and functions exercised, only by them and through their agents." After reasoning with marked ability upon the question the court said in conclusion: "We entertain no doubt, upon the facts stated in the complaint, that the defendant was ineligible." We are of the opinion that appellee Van Beek was ineligible to hold the office of sheriff prior to his naturalization.

This brings us to inquire whether the fact alleged, of the appellee's having become eligible on the fifth day of January, 1892, entitled him to take and hold the office; in other words, whether his ineligibility relates to the time of his election, or the time he was required to qualify. In considering this question it must be remembered that we have no provision declaring who are, or who are not eligible for election to or to hold the office of sheriff, and that it is only upon the general principles already stated that the appellee is held to have been ineligible to hold that office before he was naturalized. This case must not be confounded with those resting upon expressed provisions as to eligibility, either for election to or for holding any particular office. Such cases are determined by the language of the provision, while this case must be determined by the fact that the disability was one that could be, and according to the allegation was, removed in time to qualify. Mr. Cushing, in his Law and Practice of Legislative Assemblies (section 78), in speaking of the time to which disqualifications relate, says: "Thus, where it is said that no person holding a particular office, etc., 'shall have a seat;' 'shall be a member;'

'shall at the same time have a seat;' 'shall hold a seat;' 'shall be capable of having a seat;' 'shall be capable of being a member;' 'shall be capable of holding any office;' 'shall act as a member;'—the disqualification relates to the time of assuming the functions of a member; but where the following terms are used, namely, 'shall be incapable of being elected;' 'shall be eligible to a seat;' 'shall be eligible as a candidate for;' 'shall be ineligible;'—the disqualification relates to the time of the election." If the appellee's disability was removed, as alleged, he was certainly "capable of being sheriff, of acting as sheriff, of holding the office of sheriff." It can not be said in such case that he was "incapable of being elected," or ineligible as a candidate, or ineligible to hold the office. The disqualifications to election and to hold offices, found in the constitutions and statutes of the United States and the states, may be classed as those that will or may be removed before the time for assuming the office, and those that will not and can not be so removed. In the latter case it is very clear the person can not take the office, because he is not eligible to hold it. In the former he is eligible if the disability has been removed, and may take and hold the office unless he was disqualified from being a candidate.

"It has been the constant practice of the congress of the United States since the Rebellion to admit persons to seats in that body who were ineligible at the date of their election, but whose disabilities had been subsequently removed." McCrary, Elect., section 311. The disability provided in such cases was not from being elected, but from holding the office, and, when that disability was removed, the right to hold the office was recognized. Hon. John Y. Brown, of Kentucky, who was elected as a representative in the Thirty-sixth congress before he was of the required age,—twenty-five years,—was allowed to take his seat and hold the

office upon arriving at that age, notwithstanding his ineligibility at the time of his election. In *State v. Smith, supra,* the disqualification was held to apply to the right to hold the office, and not to the right to be elected thereto. In *State v. Murray,* 28 Wis. 96, it was held that an alien may be elected to the office of clerk of the county board of supervisors, and, in case his disability is removed before the commencement of the term of office for which he is elected, he will be entitled to enter upon and hold such office. That case in its facts is identical with this, and in that state, as in this, there was no constitutional or statutory provision on the subject of eligibility. The court, in considering the nature and effect of the disqualification, says: "In my judgment it is not that a person who is not an elector, only because of some disqualification which he has the power to remove at any time, is thereby rendered ineligible to be elected to a public office for a term which is to commence at a future time, but it is that a person thus disqualified shall not be eligible to hold such office. Such disqualification does not relate to the election to, but the holding of the office." These cases are followed in *State v. Trumpf,* 50 Wis. 103, 5 N. W. Rep. 876, and 6 N. W. Rep. 512, one of the judges expressing dissatisfaction with the rule announced in *State v. Murray.* From these authorities it seems quite clear that when the disqualification of one elected to an office is against his holding the office, and that disqualification is removed in time for him to take and hold it, he may rightly do so.

The appellant relies upon section 692 of the Code, which provides for contesting elections to county offices upon the ground, among others, that the person declared elected, "was not eligible to the office at the time of the election." It is contended that this makes ineligibility relate to the time of election, and that one then ineligible to hold the office is ineligible to election,

and therefore, can not qualify, though fully eligible at
the time for doing so.   In construing this language of
the statute it should be remembered that courts must
be slow to interfere with the choice of the people
expressed at legally conducted elections, and that it is
only when their choice is contrary to law that it will be
set aside. If they elect one to serve them as sheriff who
can legally qualify at the time required, no good reason
appears for setting aside their choice.   It is an eligible
officer the law requires, and any person who can qual-
ify himself to take and hold the office is eligible to it at
the time of the election.   The construction claimed
would prevent the election of one not of the required
age at the time of the election, though he would attain
to that age in time to take the office.   It would prevent
the election of one who would not be entitled to his
second papers until after the election, though he could
obtain the same, and fully qualify, by the time for tak-
ing the office.   It is in harmony with the recognized
rights of the people to freedom of choice in the selection
of their officers to say that, in the absence of any pro-
vision as to qualifications for election, they may choose
any person who is or may become eligible to take and
hold the office at the time required for qualifying.   If
their choice shall be one who can not qualify, it must
be disregarded, for, as we have seen, it is only those
who are eligible that can hold an office.   If the person
declared elected was under disabilities that could be
removed, so as to render him eligible to take the office
at the time required, we think it would be no ground
for contest that he was not eligible to take the office at
the time he was elected; in other words, one who may
be eligible at the time for qualifying is eligible to the
office at the time of election.   The judgment in cases
of contest as to county offices is "whether the incum-
bent or any other person was duly elected."   Code,
section 714.   If the contest is upon the ground of

ineligibility, and the ineligibility is such as can not be removed in time to take the office required, the judgment must be that the party was not duly elected, for the reason that he could not hold the office. If the ineligibility is such that it will or may be removed in time to qualify, the judgment must be that the person was duly elected.. In such case, if the party fails to remove his disqualification, it would have the same effect as a failure to qualify in any other respect.

V. Under section 685 of the Code, sheriffs are required to qualify "by the first Monday of January following their election." Section 1, chapter 54, Laws 1886, allows them ten days thereafter, if "prevented by sickness, the inclement state of the weather, or other unavoidable casualty" from qualifying by the first Monday. Section 687 allows twenty days after the decision in case of a contest. Section 686 provides that a failure to qualify within the time prescribed shall be deemed a refusal to serve, and section 784 that the incumbent shall "hold office until his successor is elected and qualified." The appellant contends that, as Van Beek did not qualify on the first Monday, he must be held to have refused to serve, and that the appellant is entitled to hold the office until his successor is elected and qualified. It is a sufficient answer to this contention that appellant by injunction prevented both Van Beek and the board from acting in the matter of his qualification on that first Monday. With this proceeding pending, Van Beek, though eligible, could not qualify on that day. It is so much in the nature of a contest that he was entitled to at least a reasonable time, if not the full twenty days, after the decision in his favor, in which to qualify. By this proceeding the time for qualifying was postponed until after the first Monday, and, by the time Van Beek was entitled to qualify, he was eligible to take and hold the

office. The date at which Van Beek was required to be eligible was the date at which he was required to qualify. His naturalization preceded that date, and was not, therefore, retroactive. These questions raised by the demurrer were preserved on the final submission. The foregoing discussion fully disposes of all questions presented and argued, and leads us to the conclusion that the judgment of the district court should be AFFIRMED.

ROBINSON, C. J. *(dissenting)*.—I can not assent to so much of the foregoing opinion as holds that a person may be elected to a county office in this state, who was not eligible to hold office at the time of the election; nor do I think that any of the authorities cited can be regarded as sustaining the conclusion of the majority. The rule adopted in *State v. Murray*, 28 Wis. 96, has been approved by some courts, although it is worthy of notice that a member of the court which adopted it, in the case of *State v. Trumpf*, 50 Wis. 104, 5 N. W. Rep. 876, and 6 N. W. Rep. 512, expressed the opinion that it would have been more in accord with principle to have held that one receiving votes for an office should be eligible at the time of the election, in order to be elected. His language was quoted with evident approval in *People v. Leonard*, 73 Cal. 230, 14 Pac. Rep. 853. The Wisconsin rule was cited in *Privett v. Bickford*, 26 Kan. 53, where it was held that a person ineligible to hold an office when elected might hold it after disability had been removed. The question arose under a provision of the constitution of the state of Kansas, which is as follows: "No person who has ever voluntarily borne arms against the government of the United States, or in any manner voluntarily aided or abetted in the attempted overthrow of said government,   *   *   *   shall be qualified to vote or to hold office in this state until such disability shall be

removed by a law passed by a vote of two-thirds of all
members of both branches of the legislature." A
person under the disability specified was elected to the
office of sheriff, and his disability was afterwards
removed by the legislature. It was held that he could
thereafter take the office, but stress was laid upon the
fact that the constitutional disqualification related to
the holding of the office, and not to the election. In
the *Murray case* the fact that there was no constitu-
tional or statutory provision which affected the question
decided was stated, and in the *Trumpf case* it was
intimated that a different rule might apply where the
persons to be elected to an office were required to be
qualified voters.

It does not seem to me that the custom of congress
in admitting persons to seats in that body who were
ineligible at the date of their election, but whose disa-
bilities were subsequently removed, is entitled to much
weight in this case, for the reasons that the qualifica-
tions of members of congress are fixed by the constitu-
tion of the United States, which, excepting as to place
of residence when elected, does not necessarily relate
to the time of election, and each house of congress is
made the judge of the election returns and qualifica-
tions of its own members. It seems to me that the
statutes of this state must determine the question under
consideration, and that when properly construed they
require that a person, to be eligible to a county office,
must be eligible to hold the office when elected. Sec-
tion 692 of the Code provides that "the election of any
person to a county office may be contested by any
elector of the county. * * * 2. When the incum-
bent [the person whom the canvassers declare elected]
was not eligible to the office at the time of the election.
3. When the incumbent has been duly convicted of an
infamous crime before the election, and the judgment
has not been reversed, annulled, or set aside, nor the

incumbent pardoned, at the time of the election.''
Subsequent sections provide for the organization of a
court, a trial, and judgment against the incumbent if
it be found that he was not elected; and the trial may
be had, and judgment pronounced, before the term of
the office which the electors sought to fill shall com-
mence.    If the opinion of the majority be correct, a
contest and trial might be made fruitless, and the judg-
ment be made of no effect, if by lapse of time, or the
naturalization of the incumbent or the removal of his
disabilities, he should, before the expiration of the
time given within which to qualify, become eligible to
hold the office.    Another contest to determine whether
he had become eligible might then be necessary.

It is true that the opinion of the majority states
that, if the court find the ineligibility is such that it
will or may be removed in time to qualify, the judg-
ment must be that the person was duly elected, and
that in case he fail to remove his disqualification it
would have the same effect as a failure to qualify
in any other respect.    No provision of the statute
authorizing such a judgment, or requiring any supple-
mental proceedings after the judgment is rendered, is
referred to, and I can not think the rule announced
has any support in our statute.    The uncertainty and
confusion which must result from this construction of
the statutes in regard to the contesting of elections to
county offices can not have been intended by the general
assembly.    The phrase "eligible to the office at the
time of the election," in my opinion, has a meaning
too evident to be misunderstood, and should not be
given the force of "eligible to the office when the term
begins," by judicial construction.

Section 1 of article 2 of the constitution of this
state provides that "every male citizen of the United
States of the age of twenty-one years, who shall have
been a resident of this state six months next preceding

the election, and of the county in which he claims his
vote sixty days, shall be entitled to vote at all elections.
which are now or hereafter may be authorized by law."
Section 4 of article 3 of the constitution provides that
no person shall be a member of the house of represent-
atives unless at the time of his election he "shall have
had an actual residence of sixty days in the county or
district he may have been chosen to represent," and
the same qualification is required for senators. The
evident purpose of the provision is to require that the
person elected to the house or senate be a legal voter of
the county or district he is chosen to represent at the
time of the election; yet, under the rule of the major-
ity opinion, that provision would be wholly inoperative,
and it would be sufficient if the person chosen had an
actual residence of sixty days in such county or district
when the time for taking his seat had arrived; or, in
other words, he could be a nonresident of such county
or district at the time of the election, and acquire the
necessary residence after the result of the election is
known. Section 6 of article 4 of the constitution pro-
vides that no person shall be eligible to the office of
governor or lieutenant governor who shall not have
been a resident of the state "two years next preceding
the election." The meaning of this is obvious, but it
may properly be considered with the other constitu-
tional provision referred to, as strengthening the pre-
sumption which arises from the language of subdivision
2 of section 692 of the Code, that the general assem-
bly in enacting it intended to require that the person
elected shall be eligible to hold the office at the time he
is chosen.

The views I have expressed find abundant support
in the authorities. Under the constitution of Nebraska
an elector must have resided in the state six months.
The statutes of that state provide that the election of
any person to any public office may be contested "when

the incumbent was not eligible to the office at the time of the election." It will be noticed that this language is identical with that of subdivision 2 of section 692 of our Code. But in the case of *State v. McMillen*, 23 Neb. 386, 36 N. W. Rep. 587, it was held that the person elected was required to be an elector at the time of the election. In that case the incumbent had not resided in the state six months at the time of the election, but had been a resident of the state more than six months when the term of office for which he had been a candidate began. The court referred to the Wisconsin and Kansas cases, but declined to follow them on the ground that the constitution and statutes of Nebraska were controlling, and held that the incumbent was ineligible. In *Territory. v. Smith*, 3 Minn. 240 (Gil. 164), it was held that the qualification of residence must be consummated at the time of the election, and that it would not be sufficient if completed at the time of entering upon the duties of the office. In *Searcy v. Crow*, 15 Cal. 118, a constitutional provision was under consideration, which reads as follows: "No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this state.   *   *   * " It was held that a person, to be eligible to an office under that provision, must be capable of taking the office at the time of the election. In *State v. Clarke*, 3 Nev. 566, a constitutional provision substantially the same as that of California quoted was construed, and the ineligibility thereby created was held to be want of capacity to be legally chosen to, and also want of capacity to legally hold, the office. In *Reynolds v. State*, 61 Ind. 404, it was held that, under a clause of the constitution which provides that "no person shall be elected or appointed as a county officer who shall not be an elector of the county," a person to be elected to a county office must be an elector at the time of the election." The quota-

tion from Cushing found in the opinion of the majority is in entire harmony with the cases I have cited. It recognizes the Wisconsin and Kansas rule and the custom of congress, but holds that the phrases "shall be eligible to a seat," and "shall be ineligible," when found in the law in regard to the qualifications of a person for office, relate to the time of the election, and not to the time of assuming the official functions. In my opinion a person, to be eligible to, election to a county office under the statutes of this state, must be capable of taking the office at the time of the election. The fact that to so hold would deprive one who appears to be most worthy, and the choice of the people, of an office on what, in this case, may seem to be technical grounds, is not a sufficient reason for adopting a construction of our statutes not warranted by well settled rules of interpretation, which would introduce endless confusion and uncertainty in the administration of our election laws.

I am instructed to say that GRANGER, J., concurs in this dissent.