[No. 6163.]

LAWSON ET AL. v. HAYS ET AL.

**Offices and Officers—Right to Hold Office—Injunction—Court of Equity—Jurisdiction.**

Certain members of a board of county commissioners, claiming that the board should consist of only three members, brought an action to restrain certain other members, who had been elected at the last preceding election upon the hypothesis that the board should consist of five members, from acting or assuming to act as members of said board until the final determination of such action; and, for relief on final hearing, they asked for a decree adjudging that the board of commissioners of such county consist of three members only, that there were no vacancies to be filled at such election, and that the temporary writ sought be made permanent. Held, that the real point in question involved the defendants' title to a public office, and, as a court of equity will not try such title, the trial court had no jurisdiction of the subject-matter.—P. 253.

*Error to the District Court of the City and County of Denver.*

*Hon. George W. Allen, Judge.*

Action by William Lawson and Eugene McCarthy, individually and as members of the board of

county commissioners of the city and county of Denver, against S. D. C. Hays and George I. Curtice. From a judgment for defendants, plaintiffs bring error. Plaintiffs filed a motion in this court asking for a temporary writ of injunction to the same effect as the one dissolved by the district court.

*Motion for the writ of injunction denied, and judgment of the district court affirmed.*

Decision *en banc*. CHIEF JUSTICE STEELE, Mr. JUSTICE GABBERT and Mr. JUSTICE BAILEY concur. Mr. JUSTICE CASWELL, Mr. JUSTICE GODDARD and Mr. JUSTICE MAXWELL dissent.

Messrs. DIXON & DIXON, for plaintiffs in error.

Mr. FRED W. PARKS, for defendants in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Lawson and McCarthy, members of the board of county commissioners of Denver county, residents and taxpayers therein, brought this action in the district court for themselves and in behalf of all taxpayers who may choose to join with them as plaintiffs, against Curtice and Hays, to restrain them from acting, or assuming to act, as members of the board of county commissioners till final determination of this action. As relief on final hearing they asked for a decree adjudging that the board of commissioners of this county consist of three members and no more, that there were no vacancies to be filled at the general election held in 1906, and that the temporary writ sought be made permanent.

From the complaint as amended, it appears that the plaintiffs and Thomas Uzzell were elected county commissioners at the general election in 1904 for a term of four years. They qualified and entered

upon, and ever since have continued to act in, the discharge of the duties of their office. Among other things, the board divided the county into three commissioners' districts, as they say the law requires, and no steps have been taken to increase the number of commissioners from three to five. Prior to the late general election in November, 1906, the various political parties, conceiving that the board of commissioners for Denver county was composed of five members, each nominated two candidates to be voted for, and they were voted for, thereat, and the defendants Curtice and Hays received a majority of the votes cast, and were given certificates of election as members of the board.

The complaint avers that, under the constitution and laws of the state, the county of Denver is entitled to a board of commissioners of three members only, and no more, and no vacancies existed to be filled at the election in 1906; notwithstanding which it is said that Uzzell, the third member of the existing board, has confederated with the defendants, and that, unless restrained by the court, they will organize themselves as a board of commissioners and attempt to exercise the duties thereof contrary to law and the rights of the plaintiffs, to the injury of the taxpayers and the people of the county, and to the confusion of public affairs. Plaintiffs protest that this is not an action to determine title to office, but to prevent the commission of continuous and repeated illegal acts affecting property rights.

The temporary writ, as prayed, was issued on filing the complaint. To this pleading defendants afterwards demurred upon the grounds that the court had not jurisdiction of the subject-matter of the action, and the complaint did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the district court on the first ground, the

temporary writ was dissolved, and the action dismissed, to which judgment plaintiffs have sued out this writ of error. They first filed a motion in this court asking for a temporary writ of injunction to the same effect as the one dissolved by the district court. Both parties, however, have filed briefs, and orally argued and submitted the cause, on the jurisdictional question and on the merits, as well as on the motion. We shall discuss, and dispose of, the motion and the writ, as to the jurisdictional feature, in one opinion.

We think the district court was right in deciding that in the pending action it was without jurisdiction to determine the real question submitted. The plaintiffs admit that a court of equity will not try the title to a public office, but they say this doctrine does not apply to the facts of this case, for the question which they ask to have tried is not the title to a public office, but the very existence of the office to which the defendants assert title.

This position is not correct. It is refuted by an illustration of plaintiffs' own counsel and contradicted by the prayer of their own complaint. They say that the board of county commissioners is a unit, and its members fractions of that unit. There is no denial that there exists in Denver county a board of county commissioners. Indeed, plaintiffs say they are two of its three members. The office, that is, the board, or the unit, of which plaintiffs are conceded members, or fractions, membership in which defendants also claim, exists in law and in fact. However much plaintiffs' ingenious and learned counsel may seek to disguise it, the real controversy here is whether an existing office consists of three or five members, or, stated in another form, whether there were any vacancies in that office, the board, to be filled at the November, 1906, election.

Necessarily, such determination, which plaintiffs expressly ask the court to make, not collaterally but directly is the determination of the defendants' title to such office. For if, as plaintiffs demand in their prayer, the court should decide the question whether the board consists of three or five members, or, what is the same thing, whether there were vacancies to be filled at the election, this would necessarily be a determination of defendants' title; that they have no title if the board consists of three and no more, or there was no vacancy; that they have title if the board is composed of five, or there were vacancies. The ultimate thing which a decision of the question thus submitted directly involves is defendants' title to an existing public office. That title depends upon the composition of the board, and such ascertainment, a matter of law, directly determines the validity of defendants' title as certainly as would a determination of a controverted question of fact as to whether they received a majority of votes cast at the election.

We need go no further than to three of our own decisions for sustaining authority directly in point, though abundant precedents are to be found in other jurisdictions and elsewhere in our own reports.

*People ex rel. v. Boughton,* 5 Colo. 487, was an original proceeding in the nature of *quo warranto* in the supreme court. Boughton had been elected to the office of county judge. At the election next preceding the expiration of his term, Denslow was elected as his successor, received his certificate of election and qualified, but died before the beginning of his official term. The board of county commissioners appointed Robinson to the vacancy supposed to be occasioned by the death of Denslow, and Robinson qualified and demanded of Boughton possession of the office and was refused. He thereupon brought

a proceeding in the nature of *quo warranto* to determine whether he (Robinson) or Boughton had title to the office. The court held that the proceeding was proper, and decided in favor of Robinson on the ground that there was a vacancy which was properly filled by his appointment, saying: ''The title of the relator to the office of judge of the county court depends upon the determination of the question, whether on the day of his appointment there existed a vacancy in the office.'' If that decision is right, and we think it is, then it follows here that the title of defendants to membership in the board of county commissioners depends upon the determination of the question whether there are three or five members of the board, or whether there was a vacancy in that board to be filled at the election in 1906. Such a question in the *Boughton case* was determined in a proceeding in the nature of *quo warranto*. A precisely similar question is here submitted to a court of equity, and the remedy by injunction is not proper.

In *People ex rel. v. McClees*, 20 Colo. 403, the plaintiffs invoked the original jurisdiction of the supreme court to restrain the secretary of state from issuing certificates to the defendants, and to restrain the defendants themselves from asserting any claim to act, or from acting, as judges of the district court. The plaintiffs were *de jure* and *de facto* judges, in possession of the office, and claimed that the defendants, who were asserting title as the result of an election as plaintiffs' successors, were elected, and should be restrained from assuming so to act because, under the constitution, there were no vacancies to be filled at that election. The court held that the question sought to be litigated could not be determined by a court of equity, and in the course of the opinion said:

"The sole question is: What particular persons will be thus entitled to hold such offices on and after January 8, 1895?" In other words: "Do the official. terms of judges" (naming the plaintiffs) "expire on that day, or do they continue for the period of six years from the time they were elected respectively? To determine this question there must be a construction of certain provisions of the judiciary article of the constitution. * * * The question, then, of the title to these respective offices on and after January 8th, *proximo,* is the real question in controversy. This is a question of pure legal right. In no sense can the question be regarded as one of equitable cognizance, even between the rival claimants; nor have the people of the state or of the particular judicial districts any *equity* in the controversy, even in the broadest sense of the term, except as all good citizens have an interest that the law shall be correctly applied. No rights or franchises of the people are assailed; each of the rival claimants, old and new, has been chosen by the people. The vital question is, for what period of time, respectively, were the present incumbents thus chosen? Their title at present is good and unassailed; but what is its duration? This question, when properly presented, must be determined as other questions of title to public offices are determined. * * * But it does not follow that the secretary may be restrained from the issuance of such certificate, even though the election was unlawful; on the contrary, the secretary should not be interfered with in issuing the certificate; but such defendant, having received his certificate, should be allowed to have the title to the office determined by a proper legal proceeding."

In *People v. District Court,* 29 Colo. 277, Quinn, who was acting as a member of the board of county commissioners under appointment by the governor

to fill a vacancy, sought by an injunction to restrain Page, who claimed to have been elected as Quinn's successor at a general election, from acting as a member of the board. There, as here, there was a disclaimer by the plaintiff that he was endeavoring to have the title to the office which he claimed determined. The court held that, in the very nature of things, not a step in the case could be taken without entering into an investigation of that very question. We see no distincton in principle between these cases and the one at bar.

In harmony with this conclusion, see, also, *State v. Van Beek,* 87 Ia. 569; *Arnold v. Henry,* 155 Mo. 48; *Gilroy's Appeal,* 100 Pa. St. 5.

It is fitting to state that there is no charge here that the defendants are seeking to molest or interfere in any way with the plaintiffs in discharging their duties as members of the board. Indeed, in argument the defendants concede the plaintiffs' title. The question tendered for decision by the plaintiffs, who are members of the board, is, in reality, the question whether the defendants are also members.

Cases like *Poyntz v. Shackelford,* 107 Ky. 546, and *Callaghan v. McGown* (Texas), 90 S. W. 319, cited by plaintiffs, are therefore not in point. They hold that a public officer, either *de jure* or *de facto,* rightfully in possession and exercising the duties of his office, may be entitled to an injunction against interference with him in the performance of such public duties to the detriment of the public business. Certain other cases cited by the plaintiffs have no bearing upon this controversy. Some of them are to the effect that one assuming or attempting to exercise the duties of a public office to the injury of the public may be controlled by injunction when, under the constitution and laws of the particular state, no such office was ever known to exist.

The motion for the writ of injunction is denied, and the judgment of the district court is affirmed because in this action jurisdiction of the subject-matter of the controversy is wanting.  *Affirmed.*

Decision *en banc.* CHIEF JUSTICE STEELE, Mr. JUSTICE GABBERT and Mr. JUSTICE BAILEY concur. Mr. JUSTICE CASWELL, Mr. JUSTICE GODDARD and Mr. JUSTICE MAXWELL dissent.