CASE 2—ACTION FOR PARTITION—SEPTEMBER 22.

# Jones, Etc. v. Hightower, Etc.

### APPEAL FROM GRANT CIRCUIT COURT.

DEEDS—HUSBAND AND WIFE—ACCEPTANCE BY HUSBAND FOR WIFE.—
After possession by husband and wife for forty years of lands
conveyed to the wife by a deed which was accepted by the hus-
band without the wife's knowledge, a conclusive presumption
will be indulged that she accepted the deed, both as against the
husband and those standing in his shoes.

H. CLAY WHITE FOR THE APPELLANTS.

On delivery of deed. Ward v. Small's Adm'r, 90 Ky., 198;
Haydon v. Easter, 15 Ky. Law Rep., 597; Owings v. Tucker, 90
Ky., 297; Banta v. Henry, 10 Ky. Law Rep., 36; Ford v. Gregory,
10 B. M., 180.

C. C. CRAM ON THE SAME SIDE.

Upon the same point, counsel made the following citations:   Wash-
burn on Real Estate, 3 vol. p. 288 (ed. 1876); Hatch v. Hatch,
9 Mass., 307; Foster v. Mansfield, 3 Met. (Mass.), 412; Stephens
v. Hess, 54 Penn., 26; 6 T. B. Mon., 72; Johnson's Cham. Reps.,
vol. 1, p. 255; Sharp v. Wickliffe, 3 Litt., 14; 14 B. Mon., 584;
9 B. Mon., 111.

W. W. DICKERSON FOR THE APPELLEES.

1. DELIVERY—WHAT ESSENTIAL—Stamper v. Armstrong, 12 Ky. Law
Rep., 811; Haydon v. Easter, 15 Ky. Law Rep., 597; Gen. Digest,
Deeds, 781.
2. Acceptance must be shown.   Green v. Casey, 16 Ky. Law Rep., 829;
Thompson v. Johnson, 10 Bush, 429; 11 Bush 34; 10 B. Mon.,
180; 19 Am. & Eng. Ency. of Law, pp. 637-8; 5 Am. & Eng. Ency.
of Law, pp. 445, 449.

SAME COUNSEL FOR THE APPELLEES IN A PETITION FOR A REHEARING.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

On October 22, 1852, Jeremiah Godman made and ac-
knowledged a deed to Martha Ann Jones, wife of Charles
Jones, for a tract of 100 acres of land lying partly in Pen-

dleton and partly in Grant county. Charles Jones paid the entire consideration for the land, and had the deed made to his wife, because at the time he was heavily involved, and wished to protect the property from the claims of his creditors. He and his wife lived on the land from the time of its purchase, in 1852, until her death, in 1864, and after her death he remained on it with his family. The deed was not recorded until the year 1888, when a son-in-law named Justice, without his knowledge, took it out and had it recorded. About the time the deed was recorded that part of the land lying in Pendleton county was attached by one of his creditors, and sold to satisfy the debt, the appellee Rolla A. Hightower being the purchaser. Hightower knew of the deed to Martha Ann Jones, and filed exceptions to the sale on this ground, but the court overruled them. He then assigned his bid to Frank Jones, one of the children of Martha Ann Jones. After this, Charles conveyed the entire tract to Frank Jones in consideration of love and affection and $25 in cash. Frank then conveyed it to Justice, who had had the original deed recorded, and appellees bought the land from Justice with notice of the condition of the title. After all this, Charles Jones having died, appellants, the other children of Martha Ann Jones, or their representatives, filed this suit to recover the land from appellees, on the ground that only the life estate of Charles Jones passed under his deed to Frank Jones. Appellees defended the action, insisting that, though Charles Jones had the deed made to his wife, Martha Ann Jones, it was never accepted by her, and was never intended to be accepted; that the deed was made in this way only to deceive his creditors; and that it was not intended that any title should vest in her. On final hearing, the court below took this view of the matter, and dismissed the petition. The

correctness of this conclusion is the only question arising on this appeal.

As to what the declarations and understanding of Martha Ann Jones and her husband, Charles Jones, while living on the land, really were, the proof is very conflicting. On the part of appellants the proof, by a number of witnesses, is to the effect that she understood how the deed was made, claimed the land as hers, and understood that it would go to her children at her death, subject to her husband's life estate. The proof for the appellees, on the contrary, is to the effect that she said her husband had paid for the land, and she did not claim it. This appears to have been said when they were in a little quarrel, when he had said that she thought she had the farm her way, but that she did not have it.

Admitting the evidence for the appellees to be true, and disregarding all the evidence for the appellants, where there is any conflict of testimony, it is clear that the title to this land vested, in 1852, in Martha Ann Jones, when Godman made the deed to her. Before this deed was made, Charles Jones declared his intention to have it made that way; after the deed was drawn, he declared that he had had it made to his wife for the reasons indicated. Conceding that the deed was never delivered to her, but remained always in Charles Jones' possession, as appellees contend, we have the admitted fact that Jones and wife, after the deed was made, moved upon this land, and lived there until her death, holding it under the deed. The title certainly passed out of Godman on October 22, 1852, when he signed and delivered this deed to Charles Jones and Charles Jones accepted it. Jones manifestly accepted the deed, because he took and held the land, and preserved the deed as evidence of his title. There is no proof

that he ever applied to Godman to make any other deed,
or ever notified him that he would not accept this one.
Under such circumstances, the conclusion that Charles
Jones accepted this deed from Godman is irresistible.    The
question, therefore, is, what effect on the title had the
acceptance of the deed by the husband, whether the wife
assented to it or not?

In the American and English Encyclopedia of Law (vol-
ume 5, p. 449) the rule on this subject is thus stated:

"The confidential relation existing between the grantee
and the person who receives the deed often makes the re-
ception of the deed by the third person equivalent to the
acceptance by the grantee himself, as in the case of an
acceptance by a parent of a deed for an infant child, or by a
husband for the benefit of his wife.    The husband's assent
is binding upon her, even after his death."

In 3 Washburn on Real Property, side page 583,
the law is expressed thus:

"It has been stated that, to give effect to a deed, there
must be an assent to it by the grantee, and, where it is in
his favor, the law inclines to presume such assent; yet
if a deed be made to a married woman, and her husband
dissents thereto, it is void as to her at common law.    If
the grant be to husband and wife, and he assents, she
can not, after his death, avoid the deed by verbal waiver
or disclaimer of the title."

These principles are elementary, and have often
been enforced by the courts.    The substance of ap-
pellees' case, under the proof, is that Charles
Jones did not intend the title to vest in his wife
beyond his control; that for this reason he did not have
the deed recorded; and that he supposed that it did not
take effect until recorded, although he had accepted it from

Godman as filling the contract made by him with God-
man for the conveyance of the land. But the legal effect
of the deed, if accepted, depends on its terms, and not on
his wishes or intention. Upon the making of the deed and
its acceptance by Charles Jones, the title passed out of
Godman. It did not pass to Charles Jones, and was not
in abeyance. Where was it, then, unless it passed under
the deed and to the grantee in it, Martha Ann Jones? The
deed taking effect on its delivery, the title vesting then
was not defeated by the failure to record the deed or by
any disclaimer Mrs. Jones may subsequently have made.
She was under the power of her husband. He could not
obtain her property by a *bona fide* trade with her, much
less by a disclaimer made when they were in a quarrel.
When he had this land conveyed to his wife for the purpose
of defeating his creditors, the deed was valid as against
him, though void as to his creditors. After he accepted
it, he could not have required Godman to make him an-
other, nor could he have maintained a bill in equity to set
it aside; for the chancellor, when once it was shown that
the deed was made for the purpose of defeating the hus-
band's creditors, would have left the parties as he found
them. The appellees, not being *bona fide* purchasers
without notice, stand simply in his shoes, and can make
no claim that he could not have made.

It is shown that after the deed was executed it re-
mained for some years in the clerk's office, when, a dis-
pute having arisen with a neighbor over one
of the lines, he went and got the deed, a
year or two before the war, to settle the dis-
pute, and after this kept it at his home. The care with
which he kept it, according to the testimony for appellees,
is conclusive that he had accepted it.

Under all the evidence, we are satisfied that there would never have been any trouble but for his erroneous notion that the deed passed no title until recorded, and was ineffective because it was not recorded in his wife's lifetime. If after so many years the presumption in favor of a written document could be overthrown by such proof as we have here, after the original parties are all dead, the title to land will rest upon a much less secure foundation than has been commonly supposed. After the lapse of over forty years, and the possession of the land under the deed for that length of time, the presumption of its acceptance is conclusive, and the title must be determined by the terms of the deed, and not by vague verbal declarations of Charles Jones or his wife.

It follows that appellants are entitled to the relief sought by them, and the court below should have so adjudged. The judgment is therefore reversed, and cause remanded for a judgment and further proceedings in conformity to this opinion.