[No. 7693.]

## ARNOLD V. HILTS.

1. PUBLIC OFFICE—*Title to, How Contested*—The title to a public office can be contested only in the special proceeding pro-

vided by statute for the contest of am election, or by *quo warranto*—(395, 396).

2. ——*Officer de facto*—Plaintiff was elected assessor of the city and county of Denver, at an election, held at a time when, by the decisions of this court, such election was lawful (*People v. Alexander*, 34, Colo. 193). The duly qualified, was peacefully inducted into office, entered upon the discharge of his duties, and was recognized by the public, and all officials of the city and county of Denver as the assessor. The decision in *People v. Alexander* being afterwards overruled (*People v. Cassiday*, 50 Colo. 503), he was forcibly expelled from his office by one appointed by the mayor, upon the assumption that the office was vacant. *Held*, that plaintiff not being a party to the *Cassiday* case, was not concluded by the judgment therein, or the principles of law there announced; that he was an officer *de facto*, and was not to be expelled as a mere usurper; that the expulsion was illegal, and that plaintiff was entitled to an injunction to restore him to the rooms, records and properties of the office, and to restrain the adversary claimant from interfering with him in the discharge of his duties—(394-400).

3. INJUNCTION—*To Protect an Officer de facto in His Office*—An officer *de facto* forcibly expelled from his office, and dispossessed of the records and properties pertaining thereto, by one claiming the office adversely, is entitled to an injunction to compel the restoration of such office and properties, and restrain the adverse claimant from interfering with him in the possession thereof, or in the discharge of the duties of the office, until his right shall be determined in *quo warranto* proceedings—(400).

*People ex rel v. District Court, 29 Colo. 277; Lawson v. Hays, 39 Colo. 250; People ex rel v. District Court, 46 Colo. 1,* distinguished.

And the court declined to regard the adverse claimant as having gained an advantage by the forcible dispossession of plaintiff, or as in such *de facto* possession of the office as to put plaintiff to *quo warranto*—(405).

4. MAXIMS—*One Shall Not Have Advantage of His Own Wrong*—One who, claiming to be entitled to a public office, forcibly assumes possession of the apartments, records, and other properties thereof, expelling one who is in peaceable possession of the office, and recognized by the public as such officer, will not be regarded by the courts as an officer *de facto*, when the one so dispossessed applies for injunctive relief—(409).

*Error to Denver District Court.*—HON. GREELEY W. WHITFORD, Judge.

Mr. W. H. BRYANT, Mr. E. P. COSTIGAN and Mr. HENRY F. MAY, for plaintiff in error.

Mr. H. A. LINDSLEY, Mr. THOMAS R. WOODROW and Mr. N. WALTER DIXON, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was brought by the plaintiff in error. The relief sought, in substance, was to restrain interference with his access to, or possession of, the rooms in the court house, theretofore occupied by the assessor of the city and county of Denver and the books, papers and records therein, used in connection therewith, containing and pertaining to the records of the assessment of the property situate in the city and county of Denver; and to require the defendant in error to redeliver said rooms and the contents thereof to the plaintiff, and that he be allowed to hold the same until removed therefrom according to law, etc.

The trial court denied the relief prayed for. The plaintiff brings the case here for review upon error.

Article XX of our state constitution was adopted in November, 1902. It provides, among other things, for a so-called consolidation government for the city and county of Denver. Pursuant to its provisions, a new charter was adopted in which the office of assessor for the city and county was created and, a party elected thereto who continued to perform the duties, as such, until ousted therefrom by the decision of this court in the case of *People ex rel v. Alexander,* 34 Colo. 193, wherein it was held (following the reasons stated in the case of *People ex rel v. Johnson,* 34 Colo. 143) that the

people of the city and county of Denver had no authority
to change the time of election, term of office, and time
when the term of office of the county assessor of the city
and county of Denver should commence. Thereafter,
all county officers for this county, including an assessor,
were elected at the regular state and county elections.

The record as a whole discloses, that the plaintiff
was elected county assessor of said county at the Novem-
ber election, 1910, and qualified accordingly; that no
person had been elected under the provisions of the city
charter to perform the duties of assessor since 1904; that
the person elected at that time had been ousted in the
case above referred to; that after his election the plain-
tiff, without question from any one, performed all the
duties of said office, and remained in the performance
of such duties up to and including the 14th of December,
1911; that up to that time he had been fully recognized
by all the authorities of the city and county of Denver
as the incumbent of said office, during which period he
never resigned nor withdrew from the office, nor had any
steps been taken towards his removal. That some time
after eight o'clock during the evening of December 14th,
the honorable mayor of the city of Denver made a certi-
ficate of appointment designating the defendant Hilts to
be the assesssor for the city and county of Denver, and
forthwith sent the appointment as such to the board of
supervisors of the city then in session, which board at
once confirmed the appointment; that a little later during
the evening Hilts took the oath of office as such, filed
a bond as required by the charter of said city, and filed
another bond with the auditor of state for approval. That
thereafter, some time between nine and eleven o'clock
the same night, he proceeded to the rooms occupied by
the plaintiff as the assessor's office in the court house,

accompanied by the custodian of buildings of said city and county, and a number of men, some in police uniforms, and finding the plaintiff with some of his assistants in possession of the office, with the doors locked, the defendant Hilts, the custodian of buildings and others with them, broke into the rooms, and demanded of Arnold that he vacate and deliver up said rooms and the contents thereof to Hilts; that upon his refusal so to do, the said Hilts and those with him used the necessary force to remove the plaintiff Arnold and his assistants therefrom, and from the building. That while the amount of force used was perhaps not unreasonable, if justified at all, the evidence is conclusive of the fact, that, the reason 'greater force was not used, was upon account of its being unnecessary in order to overcome the resistance made, but had it been necessary to have used greater force, the defendant was supplied with abundant assistance to have overcome any force which it would have been possible for the plaintiff to have caused to be made, after he had been advised of what was intended. That since such forcible removal the defendant has held possession of the rooms and the other county property therein, covering the records pertaining to the assessment of the property of said city and county, and has been protected in so doing by certain officers of the city and county and others; that plaintiff and his assistants have since been denied access to the rooms or the books, papers and records therein contained, on account of which they have been unable to perform the greater part of the duties pertaining to the assessment of the property of the city and county which they were theretofore performing.

The principal contentions made to sustain the ruling of the trial court are: First, that this was an attempt to try the title to an office, which it is conceded in this juris-

diction can only be done in a *quo warranto* proceeding or
by election contest; hence, that a court of equity was
without jurisdiction. · Second, that at the time of the
bringing of this suit the defendant was in possession of
the office by virtue of an appointment from the mayor to
fill a vacancy in the office of city and county assessor,
which office was created by the charter and to which of-
fice the plaintiff can make no claim, and that under ·the
decision of this court in the case of *The People ex rel.
v. Cassiday,* 50 Colo. 503, the defendant became the
*de jure* officer in possession and was in the performance
of his duties, and that he. was not only entitled to so con-
tinue, but if disqualified, he was the *de facto* officer· hence
his right to continue could not be questioned except in a
proper *quo warranto* proceeding, regardless of the man-
ner in which he secured possession of the office, or the
rooms, books and papers pertaining thereto.

It will be observed that this attempted ouster by
force happened at a time when neither the constitution,
state laws nor city charter provided for changes to be
made in the incumbency of this office.  As we read the
pleadings this action was not brought to test the title
to an office, but to restrain a certain person from forcibly
taking possession of the rooms, books and furniture per-
taining to the office of assessor, and restrain him from
thereafter preventing one theretofore in possession, and
in the performance of such duties from continuing to
perform the same, and to have them so returned to him
with the privilege of so retaining them, and to continue
in the performance of such duties until he is ousted there-
from, and the property taken from him in the manner pro-
vided by law.  In a case of this kind a court of equity
was unquestionably possessed with jurisdiction to grant
the necessary relief, as said by the supreme court of

Nebraska in the case of *Hotchkiss, trustee, v. Keck, et al.,*
86 Nebr. at page 325:

"Of course, an action of injunction is not the proper
remedy to try title to public office. The many authorities
cited by defendants in their brief establish that proposi-
tion, if indeed there was ever any doubt in regard to it.
The law is just as clear that, where one is an incumbent
holding the office under a *prima facie* legal right and per-
forming the duties thereof, a court of equity will restrain
an intruder from interfering with the proper exercise of
those duties. That the plaintiff held this office for a
term of two years ending in 1908 is conceded, and under
the statute above cited there can be no doubt of his right
to hold over until a successor is elected and qualified.
It is, of course, equally clear that the defendants, one of
whom was a candidate for election as a successor of the
plaintiff, are not invested with the power or jurisdiction
to determine for themselves whether they were duly
elected."

We think this principle specially applicable here. It
is conceded that the plaintiff, Arnold, was elected as an
assessor within and for the city and county of Denver
at the November election, 1910. At that time, pursuant
to the provisions of the constitution as construed by this
court in the *Alexander* case, *supra,* he became and was
the *de jure* officer, and thereafter continued in the per-
formance of his duties, and, while it is true that the prin-
ciples of law announced in that opinion were overruled
in the case of *The People ex rel v. Cassiday,* 50 Colo.
503, it is also a fact that this plaintiff was not a party to
that action, and this court took particular pains in that
case to point out, in substance, that while the principles
of law announced in one case might be applicable to an-
other with a like result to that reached in the former, yet

whatever force there might be in the contention for so claiming depends solely on the principles of *stare decisis* not *res judicata*. Otherwise, when applied to the facts here, it would be to say that although Mr. Arnold had been duly elected by the people at a time when, by the sanction of the highest court in the state, he became a *de jure* officer and continued as such until thereafter the supreme court of the United States declined to take jurisdiction in an action decided by this court to which he was not a party, but upon account of the principles therein announced, when that decision became final, he thereafter ceased to be a *de jure* or even a *de facto* officer, but from that moment became a usurper, subject to removal by force; the emergency to justify it to be determined by another claiming the right to the custody of the property. and rooms theretofore occupied by him as such officer.

We cannot agree with this line of reasoning. The facts upon which the *Cassiday* case was presented are not all present or involved when applied to the conditions here. In that case others had been elected under the provisions of the constitution to perform the duties in controversy; when that decision became final there had been no one elected or appointed to fill the office of city and county assessor and, so far as this record discloses no one was contending that he, instead of Mr. Arnold, had the right to perform those duties or that Arnold was without authority to do so. Under this state of facts it was not only Arnold's right, but it was his duty to continue in their performance; this, of necessity, made of him at least a *de facto* performer of the duties of the office and he was entitled to be and had been recognized as such by all of the city officials. But it is contended since we held in the *Cassiday* case, under the constitution, that there is no office of county assessor as such, that there-

fore there can be no such officer; hence, plaintiff cannot claim to be even the *de facto* performer of the duties of an office which does not exist. While technically speaking this may be true, yet we also held in the Cassidy case, as well as in the case of *The People ex rel v. Sours,* 31 Colo. 369, that article XX of the constitution, by the abolishment of these county offices as such, did not abolish the duties pertaining to them, but that they continued and it would hereafter be the duty of some one to continue to perform all such duties just the same as it had been prior to the adoption of article XX. Mr. Arnold was in possession of the books and rooms required by the person who was to perform these duties. He was likewise in the discharge of these duties, hence he was at least the performer of the duties pertaining to the office which calls for the assessment of the property of the city and county of Denver for the purposes of taxation. So far as we are advised, the only duties provided by the charter for the city assessor to perform are those provided for by the general laws of the state for all county assessors to perform. Mr. Arnold was in the performance of all these duties and, at the oral argument, it was admitted by one of the counsel for the defendant that in his opinion, his acts as such even hereafter, would have been binding upon the people had no one been appointed by the mayor to fill the position of city and county assessor. His certificate of election, and oath of office both purport to cover and read 'the office of assessor of the city and county of Denver' although further showing that the election upon which they were issued was held in November instead of May, as the charter provides. He was also recognized as such assessor by the city and county authorities both before and after the decision in the Cassidy case, and while these facts are not especially material

here, where the title is not to be tried, they do have some
bearing upon the question of his good faith in retaining
possession of the office.  Being thus in possession and
having taken such possession at a time when he was
recognized by all as the *de jure* officer, we think a court
of equity is, under these facts, justified in restraining in-
terference by force with such possession until his right
to the office has been determined in proper *quo warranto*
proceedings.—High on Injunctions, vol. 2, (3rd Ed.),
section 1315; *Blain v. Chippewa Circuit Judge,* 145 Mich.
59; *Poyntz, etc. v. Shackelford,* 107 Ky. 546; *Braidy v.
Theritt,* 17 Kans. 468; *Callaghan v. McGown,* 90 S. W.
(Tex. Civ. App.) 319; *Brady v. Sweetland,* 13 Kans. 41;
*Conover v. Devlin,* 24 Barbour (N. Y.) 587; *Kerr et al.
v. Trego et al.,* 47 Pa. St. 292.

As stated by the supreme court of Indiana in the
case of *The City of Huntington v. Cast et al.,* 149 Ind.
at page 259:

"The welfare and good order of society and govern-
ment require that those engaged in the discharge of pub-
lic duties should not be disturbed by claimants whose
right to discharge such functions is as yet uncertain.
Equity will protect the possession of the incumbents
from any unlawful intrusion."

It is urged that this court is committed to a con-
trary doctrine.  We do not think the cases cited sustain
the contention.  The facts in the case of *The People ex
rel v. District Court,* 29 Colo. 277, were in no respect
similar to those here.  No similar question to those here
presented for determination was before the court there.

The case of *Lawson v. Hays,* 39 Colo. 250, involved
the contention of whether the board of county commis-
sioners of the county should consist of three or five.  Two
members out of the three whose titles were not questioned

brought an action to restrain two others, who had just been elected, from acting or assuming to act as members of the board until final determination of that suit. They asked that on final hearing it be adjudged that the board consist of three members and that the temporary writ sought then be made permanent; the court very properly held that the real point in question involved the defendant's title to a public office, and, as a court of equity will not try such title; the trial court had no jurisdiction of the subject-matter. There was no contention that there were two claimants for the office one in and one out, or pertaining to any force in securing possession or otherwise, the sole question was to determine the existence of the office which would cover the defendant's title thereto.

In the case of *The People ex rel v. Elbert District Court*, 46 Colo. 1, the controversy was in no respect similar to this. The office of Olsen as county commissioner had expired by limitations. The relator Pauls had been chosen as his successor and qualified. This all transpired in a peaceful, orderly manner, and, at the time provided for such changes, and as we said, one was then unconditionally out and the other unconditionally in the office, and the party seeking the injunction had neither possession to, nor claim upon, it, either *de jure* or *de facto,* yet sought to enjoin out of the office, one, who, upon the undisputed facts, had been solely elected thereto, and had received the proper certificate, had taken the prescribed oath and possession of the office. It is entirely different from the case at bar. Here the incumbent Arnold had gone in peacefully and lawfully, at the time he should, and was *de facto* in the performance of such duties when forcibly removed by another claimant whose rights to it had not as yet been determined; under such circumstances a court of equity will protect such an in-

cumbent in possession as against others who may claim the right to it, until their claims are established.

It is next contended as the defendant is now in possession by virtue of an appointment from the mayor, confirmed by the supervisors, etc., as provided by the charter, and in the performance of the duties, that this makes of him at least a *de facto* officer in possession. Further, that a consideration of his title will disclose that he is in fact a *de jure* officer, but in either event as these questions cannot be looked into or tried in an equitable proceeding, that the only way he can now be ousted or these questions tested, is by *quo warranto* proceedings against him. As previously stated, the title to the office or any office is not involved in this action, but the real question to be determined pertaining to this phase of the contention, is whether the courts are to recognize that there is an advantage to be gained by securing possession forcibly. If this is true, then a similar advantage is to be had by the ousted party, rallying to his assistance sufficient suppor to overcome the resistance of the other incumbent, and retake possession; the result being that the courts would recognize the advantage secured by the one who could rally to his assistance the larger mob to be used in aiding him to obtain or in retaining possession. It would be to say, let mob violence prevail, and the courts will recognize that the winner has thus secured an advantage over his adversary, also that a claimant for an office or for the rooms, books and papers pertaining to one, can, for himself, decide when a sufficient emergency exists to justify such action. This court has heretofore held that this is not the law in this jurisdiction, and has pointed out the proper mode of procedure in which to have these questions determined. *In re Fire and Excise Commissioners,* 19 Colo. in commenting upon the proper mode of pro-

cedure to have determined the rights of different claimants to an office, this court, at page 499, said:

"That no further doubt may exist upon this question, we say, without hesitancy, that if the executive order of removal is questioned by the incumbent, the courts have the power, and it is exclusively within their province, to pass upon such objections and determine as between the respective claimants the right to the office in question, and the law provides a plain and adequate procedure for that purpose; and a speedy determination of such question is insured by express statute. Mills' Ann. Stats. p. 830. All law-abiding citizens will, and all others should be required to, submit such controversies to these tribunals for settlement. The district attorney is empowered by statute to bring an action for that purpose."

At page 503, in commenting upon this same phase of the matter this court further said:

"A proper regard for the reputation and peace of the community would dictate that the claimants institute proper proceedings in court to determine their right to the offices. In this way a speedy and peaceful result can be reached, and the person entitled to the office installed therein without disturbance or delay."

If it were necessary, we might add that the very foundation of organized government, depends upon all citizens who refuse, being compelled to recognize and bow to the rules and regulations of the majority, promulgated through the laws of the land.

A somewhat similar state of facts existed in the case of *Blain v. Chippewa Circuit Judge, supra,* where the party taking possession by force made this same contention. The supreme court of Michigan in answer to this contention, among other things, at page 65, said:

"To the suggestion that the injunction should be dissolved upon the ground that Blain and not Hecox is the *de facto* officer, we reply that this claim can only rest upon the proposition that, while Hecox was unquestionably an officer in possession, claiming title to the office, and performing his. duties whenever occasion presented, Blain, by virtue of a trespass and the acquiescence of his friends, whereby he excluded Hecox from the official place of business, and in part of the property belonging to the office, and proceeded to perform its duties when opportunity offered thereby *became* the *de facto* officer instead of Hecox, and that therefore this injunction could not be lawfully issued, because restraining him from performing the duties of the office would be ousting a *de facto* officer. We are of the opinion that this is unduly dignifying an attempt at forcible usurpation, and that Hecox is the *de facto* officer, and that if his bill made a *prima facie* case in the opinion of the circuit judge, it was a proper exercise of discretion to restrain interference with Hecox's performance of duty by Blain. Certainly the question of who is really the *de facto* officer cannot depend alone upon the ability of one to forcibly exclude an officer from his place of business, and while holding him out by force perform its duties to the extent of doing such business as is presented. Such methods of obtaining possession of a contested office would have advantage of apparent simplicity, but would not tend to the preservation of the public peace. This opinion rests upon the belief that the bill shows Hecox to be the *de facto* officer, in possession of the office when the application for injunction was made.

To the same effect, in substance, is the Kansas case of *Braidy v. Theritt, supra,* the rule announced reading from the syllabus is:

"Where an office is in dispute between two persons, and the one in actual possession of the office steps out of the place where the business is usually performed, but with no intention of abandoning the office, or of giving it to the other person, and such other person with full knowledge of the facts steps in and immediately proceeds to do business as though he was in fact the officer, *held,* that as between such two persons, the one previously in possession must be considered as the officer *de facto.*

We think this principle applicable here, and if any advantage is to be recognized by possession under this state of facts, it belongs to the incumbent who was in the office and in the performance of the duties prior to the time the contention arose. Mr. Arnold was inducted into office peacefully and lawfully, and under the facts as they exist here as between him and the defendant claimant, he should be allowed to vacate peacefully, or be lawfully removed, and until such time comes he should be protected by the courts in such possession. Let it be understood that nothing in this opinion is intended to give any expressions pertaining to the right to continue to hold any office involved or the possession of the office, or privilege to perform the duties pertaining thereto, when it is sought to have those matters tested in a proper proceeding instituted for that purpose.

For the reasons stated the judgment is reversed and the cause remanded with instructions that a decree be entered in harmony with the prayer of the plaintiff's complaint.        *Reversed and remanded with instructions.*

Decision *en banc.*

Mr. JUSTICE WHITE and Mr. JUSTICE GARRIGUES dissent.

CHIEF JUSTICE CAMPBELL not participating.

· · Mr. JUSTICE GABBERT, specially concurring: ··

Two questions are presented by the record in this case: (1) Where two persons are claiming the right to the same public office, one in possession under *prima facie* legal right, can the other rightfully obtain possession by force? (2) If possession is obtained by force, can the one thus ousted be reinstated by a proceeding in equity?

Arnold, at the regular election in November, 1910, was elected to the office of county assessor of the city and county of Denver for the term of two years, beginning in January, 1911. He duly qualified, entered into the possession of the rooms in which the business pertaining to assessor was transacted, as well as the records, books, and paraphernalia of the office, and was in possession of such office, discharging the duties thereof, on December 14, 1911. On that date, Honorable Robert W. Speer, mayor of the city and county of Denver, assuming that there was a vacancy in the office of assessor, for that entity appointed Mr. Hilts to that position. Hilts, claiming to have qualified as by law required, proceeded to the rooms occupied by Arnold in his official capacity, and demanded possession thereof, and the books and records pertaining to the office of assessor. This was refused, when Hilts, aided by others, broke open the door of the rooms and by force took possession, and ejected Arnold. Arnold then brought an action in the district court the purpose of which was to restrain Hilts from interfering with him in the performance of his duties as assessor, and requiring Hilts to re-deliver to him possession of the rooms, records, books and paraphernalia of the office until he, the plaintiff, was removed from the office of assessor according to law. This relief was denied, and Arnold has brought the cause here for review on error. ·, ·

On behalf of Hilts it is contended that title to a public office can not be determined by injunction. This is correct. We have so held in at least three cases; and that title to a disputed public office can only be established by *quo warranto,* or in a proper case in an election contest, as prescribed by statute.—*People ex rel. Hinckley v. District Court,* 29 Colo. 277; *Lawson v. Hays,* 39 Colo. 250; *People ex rel. v. District Court,* 46 Colo. 1.

In each of those cases, however, the facts were such that the rights of the respective parties could only be determined by ascertaining which of the litigants was entitled to the office in dispute. In none of these cases was the question involved of whether or not one in the possession of an office under a *prima facie* legal right, could by injunction, restrain another from interfering with the discharge of the duties of the one in possession until the right to the office was determined according to law. In fact, in the *Lawson* case, it was stated that there was no charge to the effect that the defendants in the case were seeking to molest or interfere in any way with the plaintiffs in discharging their official duties; hence, it was said the cases cited, to the effect that a public officer, either *de jure* or *de facto,* rightfully in possession, and exercising the duties of his office, was entitled to an injunction against interference with him in the performance of such public duties, to the detriment of the public business, were not in point. In the case at bar, as stated at the outset, the question is, whether or not one claiming title to a public office can, by force, oust another from the possession of such office, who claims to be rightfully entitled thereto under a *prima facie* legal right.

For a better understanding of the situation, it should be here stated that the contention on the part of Mr. Hilts is, that the decision of this court, in the *Cassidy* case, 50

Colo. 503, holding that by virtue of article XX of the state constitution and the charter adopted by the city and county of Denver, county offices and county officers, as such, were abolished, and that the officers to perform the functions of county officials were such as by the charter provided, thus overruling the decision in the *Johnson* case, 34 Colo. 143, which held that within the municipality of the city and county of Denver there were two entities, one a county and the other a city, and that officers of the former must be elected as provided by the constitution, and the general laws relating to officials, that Arnold is no longer entitled to discharge the duties of assessor, and that that office may now be filled by appointment by the mayor.

Arnold was elected at the regular election in the fall of 1910, for the term of two years, beginning January following. He qualified, was peaceably inducted into office, and proceeded without question from any one to discharge the duties of the office, until questioned by Mr. Hilts. Arnold was, therefore, at least an officer *de facto,* at the time Hilts ousted him of possession. Whether the decision in the *Cassidy* case in any manner affected his office, or by that decision his rights thereto were in any manner different from what they were under the decision in the Johnson case, are in no sense involved in the proceeding before us. It may be that Hilts is now entitled to the office of assessor, but he has no power or authority to determine that question for himself, by forcibly ejecting Arnold, who, at least, is a *de facto* officer, and taking possession of the records of the office. The law provides a tribunal and an appropriate proceeding to determine this question. That a public officer, either *de jure* or *de facto,* in the lawful possession of an office, is entitled to an injunction to restrain one who disputes his right to it, from

employing force to prevent him from discharging his
official duties until the rights of the respective claimants
are settled in the manner, and in the forum, which the
law provides, is beyond successful dispute, both on prin-
ciple and authority.—*Hotchkiss v. Keck,* 86 Nebr. 322;
*Callaghan v. McGown,* 90 S. W. 319; *Brady v. Theritt,*
17 Kan. 468; *Poyntz v. Shackelford,* 107 Ky. 547; *Blaine
v. Chippewa Circuit Judge,* 145 Mich. 59.

Any other rule would be detrimental to the public
interest, by creating public confusion in the discharge of
official duties, and invite a breach of the peace.   The one
in possession, if ousted by force, if his rights could not
be protected by the courts, might resort to force to re-
gain possession, and if successful, the ousted party could
again employ force to gain possession.

In order to preserve tranquility litigants must be
required to settle their disputes in the forum which the
law provides for that purpose.   One who ejects another
from an office rightfully in possession, under claim and
color of title, will not be heard to say that by virtue of
his wrongful act the latter can not be re-instated, except
by a judgment in a proceeding to determine the title to
the office.

We think all the propositions involved in this case
are fully settled by the decision of this court in *In re Fire
and Excise Commissioners,* 19 Colo. 482.   It was there
held that the governor had no authority to forcibly in-
duct his appointees into office, and that the rights of such
appointees, as against the incumbents, could only be de-
termined in an appropriate proceeding.   If a claimant to
an office is without authority to employ force to oust one
in possession, having *prima facie* legal right to such
office, then it must follow, that any threatened attempt of
the claimant to employ force could be enjoined, and that

if before such injunction was obtained, he secured possession by force, the courts are clothed with authority, and it is their duty, to reinstate the ousted official.

---

Mr. JUSTICE WHITE dissenting:

When Hilts, and those associated with him, entered the room occupied by Arnold, and, as disclosed by this record, forcibly ejected the latter therefrom, and took possession thereof, and of the books and other paraphernalia used by him in performing the duties pertaining to the office of assessor, they were clearly in the wrong, and there is no theory under which their acts in that respect can be justified or excused. It is likewise equally true that all law-abiding citizens will, and all others should, be required to refrain from the use of force in an effort to establish their rights or supposed rights.

It does not follow, however, that when rights are once established, even by force, a court of equity will, or can lawfully, compel a surrender of such rights and restore them to one not lawfully entitled thereto. If A. has possession of B's horse, and under a wrongful claim of ownership, or right of possession, or arbitrarily, refuses to surrender the same to B., the latter has no legal right to assault A. and take from him the horse. If he should do so, however, no court of equity will compel B. to surrender the horse to A. and resort to a suit at law to recover the same. The taking of the horse by B. from the possession of A. constituted no private wrong against A. cognizable in a court of equity, though the manner of taking constituted a public wrong, to-wit, a wrong against society. So here, if Arnold had possession of rooms, books and other paraphernalia which were incidents of an office to which Hilts had been lawfully appointed,

qualified thereunder, and entered upon the discharge of its duties, and the former refused to surrender such incidents of the office to Hilts, the latter had no legal right to assault Arnold and take the rooms, books, papers, etc., from him. Having done so, however, no court of equity should compel Hilts to surrender such incidents of his office, and resort to a suit at law to recover the same. If Arnold is not the *de jure* officer, and Hilts is, the taking of the incidents of the office by Hilts from the possession of Arnold, constituted no private wrong against Arnold cognizable in a court of equity, though the manner of taking constituted a public wrong, to-wit, a wrong against society. The wrong consisted solely in the manner of the act of taking, that is, in breaking the peace of society, and the retention, after taking, could in no wise be a wrong, either public or private. Arnold could have no interest in the office, unless he be the *de jure* officer. The interest of the public is two-fold: first, that the peace of society be maintained; second, that the person in whom the law has vested the duty of performing public functions be permitted to do so. By the act of taking, the peace of society was disturbed, a public crime committed, and for that offense a punishment is prescribed by statute to be imposed upon the wrongdoers.

But the majority opinion concedes, that title to an office can not be tried in this character of a suit, but holds that this action was not brought to test the title to an office; that its sole purpose is to restrain another from forcibly taking possession of the incidents of such office, require him to return the same to the office, and to restrain him from thereafter preventing one theretofore in possession of such office, and in the performance of the duties pertaining thereto, from continuing to perform the same.

As a public office is an intangible thing consisting of the incidents thereof, an agency and duties to be performed, it is necessarily one entity; and as no one can be ousted from an intangible thing by force, the physical taking of rooms, books and papers incident to an office does not legally sever them from the office, and the act of taking by force is, in legal effect, a continuing act, I concede that a court of equity might, in a proper case, exercise its power to put a stop to the attempted act of severance. This, however, presupposes the existence of an office, an incumbent thereof holding under a *prima facie* title and performing the duties thereof, and the injunction can only restrain an "intruder," not one legally entitled thereto. Such is the effect, I think, of the holding in the cases and authorities cited in the majority opinion, except those based solely upon statutes authorizing such procedure.

*Hotchkiss, trustee, v. Keck, et al.*, 86 Neb. 322, 325, is the first case cited and quoted from upon this question. An inspection of the quotation and the case discloses that there was, without question, an existing office, an incumbent who had been holding the office under a certificate of election for two preceding years, and, under the statute, had a right to hold over until a successor was elected and qualified; and the defendant enjoined, though having been a candidate for election as successor to the incumbent, had not received a certificate of election, but the canvassing board had refused to issue to him such certificate. Thus the legal effect of the facts appearing constituted the party restrained, an intruder, one without right or title to enter. Clearly in such case the title to an office is not involved. That opinion, after stating that it is the duty of the board of canvassers of the election returns, to determine whether a candidate for the office in

question was elected, and, if so, to issue a certificate to that effect, declares, that if they refuse the certificate "the candidate has no *prima facie* right to the office." I can not make the meaning of that decision clearer than by quoting from the syllabus as follows: "If one without any *prima facie* right to an office attempts to take possession of the office and discharge the duties thereof, a court of equity, at the suit of the incumbent of the office, will restrain him from so doing."

High on Injunctions, vol. 2, (4th Ed.), section 1315, is also cited, and a cursory reading of the text would seem to support the majority opinion. The author of the text, however, cites but two cases: *State v. Durkee,* 12 Kan. 308, and *Brady v. Sweetland,* 13 Kan. 41, in support of the proposition.

In the former case a suit in the nature of *quo warranto* to oust certain alleged officers, contained a prayer for an injunction against such alleged officers and others as an ancillary proceeding. A temporary injunction was granted by the judge of the court below in accordance with the prayer of the complaint. Afterward the temporary injunction was dissolved as to such alleged officers. In holding that the temporary injunction was properly dissolved, the supreme court interpreted the *quo warranto* petition as alleging that the defendants therein were the county officers *de facto,* and probably *de jure,* and held that under such facts the state, as plaintiff, had no right to restrain them from the exercise of the duties and functions of their several offices pending the litigation, the syllabus on that question being as follows: "In an action in the nature of *quo warranto* against officers *de facto,* who claim to be officers *de jure,* it is not error for the judge of the court below to dissolve a temporary injunction granted to restrain such officers *de facto* from exer-

cising the duties and functions of their respective offices pending the litigation." Surely such case can not be an authority for the doctrine announced in the majority opinion, but directly supports the proposition, that an injunction can never properly issue in a case of this character, unless the undisputed facts show that the injunctive plaintiff has *prima facie* title to the office and the enjoined defendant has no such title.

The other case, *Brady v. Sweetland, supra,* cited by High on Injunctions in support of his text, and also in the majority opinion, was upon the following admitted facts: B. was the treasurer of a school district, N. S. was the clerk of said district, and I. S. was the director of the same, and the three constituted the school district board. W. claimed to be entitled to the office of treasurer thereof instead of B., and had previously instituted an action against the latter in the nature of *quo warranto* to have his rights determined and to obtain possession of the office. While that action was still pending, W., in conjunction with one member of the board, undertook to hire teachers and took possession of the school house. The school board, as represented by a majority thereof, asked for an injunction against W., and his associate. The injunction as prayed was granted. Thus the case is one wherein the party enjoined, admitted by the pleadings that the plaintiffs were such officers, and by reason of the institution of the *quo warranto* proceedings also admitted that the party seeking the injunctive relief was actually in possession of the office and performing the duties thereof. Therefore, the enjoined defendant clearly came within the definition of an intruder, one who in no sense had a *prima facie* right to the office.

*Braidy v. Theritt,* 17 Kan. 468, is likewise cited in the majority opinion. The case in my judgment does not

support the majority opinion. In that case T. and others brought suit against B. and others to restrain the latter from interfering with T. while discharging his duties as a member of the council of the city of Wathena. The council consisted of five members. Four were admitted by the pleadings to have been such members. The other member was either T. or B. Both claimed it. T., it was admitted had been in the possession thereof under a certificate of election for the year previous, and continued, under the law, to hold the office until his successor was duly elected and qualified. T. and B. were opposing candidates for the office at a subsequent election, and *T. received the certificate of election* and qualified under the same as his own successor. *B. received no certificate of election* from any source, and had never acted as councilman, but the mayor refused to recognize T. and assumed to recognize B. as the councilman. Thereupon two, who were admitted to be legal members of the council, together with T., retired from the meeting. B. thereupon assumed to take the oath as a councilman, and with the other two councilmen remaining, proceeded to do business as a city council. The court held that an injunction against B. to prevent him interfering with T. in the discharge of the latter's duty as councilman, was proper. The facts of the case clearly show that B., not having received a certificate of election, was in no wise either a *de jure* or a *de facto* officer, and that T. was not only *prima facie* the *de jure* officer, but also actually the *de facto* officer. The legal effect of the facts remove the case from that class where the title to an office is involved. Under the facts B. comes clearly within the definition of an intruder, one having no *prima facie* title whatever.

*Poyntz v. Shackelford,* 107 Ky. 546, cited in the majority opinion, holds, quoting from other authorities,

that, "The actual incumbent of an office, whether *de jure* or *de facto,* if duly qualified and in office by virtue of a certificate of election issued by the proper officers, will be protected by injunction against *unlawful* interference with his possession thereof." The opinion in that case discloses that the question of the title to the office was solely a matter of law, the facts being undisputed, and that the court determined that matter and granted the injunction in favor of the *de jure* officers who were also the *de facto* officers. Clearly it is not authority for the doctrine as applied in the case at bar.

The case of *Callaghan v. McGowan,* 90 S. W. 319, (Tex. Civ. App.), cited in the majority opinion, sustains an injunction issued in favor of those undisputedly in possession of an office under certificate of appointment, from interference by certain persons who in no wise claimed to be entitled to the office, but only that they had a right to take possession of the rooms and the authority to appoint some one to discharge the duties of the office.

Another case cited in the majority opinion is *Kerr, et al v. Trego, et al.,* 47 Pa. St. 292. I think a careful consideration of that case clearly shows that it comes within the rule announced in *Braidy v. Theritt, supra;* that is, the legal effect of the facts removes the case from the class where the title to an office is involved. The undisputed facts were, that the term of office of twenty-one members of the council of the city of Philadelphia had not expired. That is, they were hold-over or continuing members. The law made it their duty to receive, at the city hall, on a day named, the new members thereof, (who had been elected in the respective wards), with a view to the due organization of the common council. Eleven of the continuing members, together with the president, clerk

and assistant clerk of the council, met at the time and place designated by law, and received the new members, who had been duly elected in the respective wards. The minority of the continuing members of the council refused to participate, but turned aside and assumed to receive other persons claiming to have been elected in the respective wards as such members. The suit was instituted by the majority of the continuing members, the new members recognized, and the president of the council, to prevent interference with the transaction of business. The defense was, that there had been fraud in the wards in the election of certain members of the council recognized by the majority, and that others should have been recognized and declared elected. Clearly the enjoined associates of the minority had no certificates of election, and had no *prima facie* title to the office, while those associating with the majority did have such certificates, and, therefore, *prima facie* title.

*Conover v. Devlin,* 24 Barb. (N. Y.) 587, is conceded in the majority opinion to be based upon a statute, and, therefore, has no application here and need not be considered.

*Huntington v. Cast, et al.,* 149 Ind. 255, 259, also cited in the opinion, involves a like principle recognized in *Braidy v. Theritt, supra,* and *Kerr, et al. v. Trego, et al., supra.* The facts admitted by the pleadings presented only a question of law which the court determined, and held that the parties enjoined were claiming under an alleged appointment that was absolutely void, the governor having appointed such parties to the supposed office that did not exist.

The only other case cited in the opinion upon the proposition now under consideration is *Blain v. Chippewa Circuit Judge,* 145 Mich. 59. The undisputed facts

of that case disclose that H. and B. were opposing candidates for the office of recorder of a city. H. had been serving in that office for the preceding year under a certificate of election. The returns of inspectors of election were made to the city council, whose duty it was to canvass and declare the result of election, and furnish a certificate thereof to the successful candidate. The council refused to canvass the returns and no certificate was issued to either party. Thereafter a new city council came into office, and upon request of B., canvassed the returns of the inspectors and declared B. elected. B. thereupon claimed to have qualified as recorder and to be in full possession of the office, performing the duties thereof, when H. filed a bill for an injunction to restrain B. from intruding into said office until the title to the office should be lawfully determined in a proper proceeding. The injunction was granted. The old council, who alone had authority to canvass the returns of election, declare the result and issue a certificate, refused to do so. The new council subsequently coming into existence had no such authority, and the undisputed facts of the case disclose that their attempted act in that respect was a nullity. Therefore, the case comes clearly within the rule that the injunctive plaintiff had a *prima facie* title to the office, and the enjoined defendant had no such *prima facie* title, that is, he had no certificate nor had he obtained *prima facie* title by judgment of court or otherwise.

I think the principle which I am here seeking to apply is clearly recognized in several cases by this court. In the *People v. District Court,* 29 Colo. 277, Q. had been appointed and held a certificate thereof from the governor to fill a vacancy in the board of county commissioners of Lake county. The law authorized him to serve "till the

next general election and until the election and qualifica-
tion of his successor." At a general election held after
Q's. appointment, P. had been duly elected as his suc-
cessor and had received, and then held, a certificate of
election from the proper canvassing board. P. holding
such certificate was about to take possession of the office
in which Q. was then serving. Thereupon Q., still in
possession of the office, sought the aid of a court of
equity to enjoin P. from attempting to act as such officer,
and to enjoin the other members of the board from recog-
nizing P. as such officer. The district court issued a
temporary injunction as prayed, and commanded the
other members of the board to recognize Q. until further
order of the court. Thereupon P. and the other members
of the board applied to this court for a writ of prohibi-
tion against the district court, and for an annulment of
the order aforesaid. In granting the writ, and annul-
ling the order, this court, speaking through CHIEF JUS-
TICE CAMPBELL, at page 280 of the opinion, said:

"While plaintiff Quinn protests that he is not en-
deavoring to have the title to the office which he claims,
determined in that proceeding, yet in the very nature of
things the district court could not take a step in the case
without entering upon an investigation of that very ques-
tion. That a court of equity has not jurisdiction to try a
disputed title to a public office is too clear for argument.
That determination can be made only in an action in the
nature of *quo warranto,* or in an election contest, as pre-
scribed by statute. What must the district court necessar-
ily decide before it can grant even a temporary writ?
Certainly, it must investigate and determine either as
matter of fact or law, that at least a *prima facie* case of
the right to the office is shown to be in the plaintiff. To
this extent, therefore, there would be a decision that he

had the better right to the office, and upon a final hearing, either upon a demurrer to the complaint, or upon a trial of the facts if the issue upon them is made, the court, before it can issue a permanent injunction, must necessarily hold that the plaintiff's title is superior to that of his adversary. This can not be done in an equitable action."

Indeed, the learned Chief Justice, further on in the opinion recognizes that some authorities hold, that under certain circumstances where a certificate of election is held by a claimant to an office, he may have a writ of mandamus to place him in the office as against a predecessor therein who, whether holding by election or appointment, claims that he is still entitled to hold because the election, for some reason is invalid, and that sometimes in favor of such certificate holder, an injunction has been granted, pending decision of title in *quo warranto when such relief is necessary to protect public property, conserve great public interests, or prevent irreparable injury.* He then says:

"But no well considered case can be found where such relief has been given to one not holding the certificate of election against the holder thereof, under facts such as this record discloses."

Clearly, the case at bar does not come within the exception noted. The petitioner has not only failed to show the existence of a county office, but by his allegations as to the existence of the twentieth constitutional amendment, the decisions of this court, the adoption of a charter, the creation of the office of assessor thereunder, the appointment of Hilts thereto and the latter's possession of such certificate and qualification thereunder, shows beyond question of doubt that the county office to which alone he has a certificate of election, does not exist,

that the office created under the municipal charter, does exist, and that Hilts has the only certificate of appointment or election thereto. Neither does he show that he is entitled to have the rooms, books, papers, etc., returned to him in order to protect public property, conserve great public interests, or prevent irreparable injury.

The rule which I think is recognized and established by the authorities, is as follows: Where a public office exists, (perhaps either *de facto or de jure*), and there is a *de facto* incumbent holding under *prima facie* title, he may invoke the powers of a court of equity to protect him in the possession of the office and the incidents thereof as against one that has no *prima facie* title thereto, but if the controversy arises between two claimants, each of whom has a *prima facie* title, it is clearly a dispute as to a title to a public office, and equity has no jurisdiction therein. The last proposition is the principle announced in *State v. Durkee, supra, The People v. District Court, supra,* and I think recognized by other decisions herein reviewed.

The case at bar, however, does not come within the principle stated above. The power which created an office may abolish the same, annul the agency, or transfer the duties of the office to some other agency, and the incidents of the office are likewise affected as public instrumentalities. Though Arnold and Hilts claim the same rooms, books, papers, etc., their respective claims are based upon separate and distinct offices. The office to which Arnold was elected was a county office, created by the constitution and general laws of the state. The rooms, the books, etc., here in question were at one time incidents of that office. The same sovereign power, however, that created that office, abolished the agency thus created, and transferred the duties of the prior office to

an agency to be designated by a charter, brought into existence by the people of a municipality created by the constitution. The incidents of the prior office thus abolished, necessarily followed the transfer of the duties and vested in, and became incidents of, the new office thus created. In other words, the office to which Arnold was elected, and to which he lays claim in his complaint, was a county office; whereas the office to which Hilts was appointed, and to which he lays claim, is a municipal office. The twentieth amendment to the constitution abolished county offices within the territory known as the city and county of Denver, and transferred the duties thereof over to other agencies to be named by the people of the municipality in a municipal charter to be by them adopted, and thereby other offices were created and the duties, though not abolished, were transferred and became the duties of the newly created municipal office, and the rooms, books, and papers incidents thereof.

While some courts have held that an attempted creation of an office by an unconstitutional statute confers color of office, and that the incumbent of such an office under certificate of election or appointment, should be treated as a *de facto* officer, they have never held that the rule applies after the law, under which the office was attempted to be created, has been declared unconstitutional. The general rule is, that where there is no office *de jure* there can be no officer *de facto,* and whenever an office ceases to exist, the rights of the incumbent terminate.—29 Cyc., pp. 1390, 1391, and cases there cited.

But, were we to assume that there could be a *de facto* officer where there is no office *de jure,* it would in no wise affect this controversy. The rule applies only where there is apparently such office and never after a valid pronouncement that no such office exists. And it is im-

material whether the declaration of non-existence of the office is made in a suit to which the incumbent of the alleged office is a party, or whether it be made in some other proceeding, or by constitutional or legislative enactment. This is necessarily true, inasmuch as between an occupant of a public office and the people of the state there exists no property right in such office, the right being purely political. The people of the state may abolish such office and leave the late occupant without either recompense or redress.

This court declared in *People v. Cassiday,* 50 Colo. 503, that since the adoption of article XX of the constitution, and the formation of the municipal corporation of the city and county of Denver, there has never been within the limits thereof a county office, or county officer as such, except as the proposition may have been affected by the decision of this court in *The People ex rel. v. Johnson,* 34 Colo. 143, and that the holding in the latter case was erroneous. It necessarily follows, that upon the adoption of the constitutional amendment, and the formation of the city and county of Denver, the office to which Arnold claims to have been elected, instantly terminated, by reason of such constitutional pronouncement, but by reason of an erroneous decision of this court in the Johnson case, *supra,* the office apparently existed until the subsequent declaration of this court in the Cassiday case, *supra,* giving full vigor and effect to the constitution. Therefore, when the Cassiday decision became effective, it was a judicial pronouncement that previously a constitutional amendment had abolished the office, but the office had apparently continued until that decision, and thus the matter is very clearly seen to be analogous to the apparent existence of an office attempted to be created by an unconstitutional law.

However, as the *Cassiday* decision became effective
on November 23, 1911, and Hilts was not appointed as-
sessor under the charter until December 14, 1911, there
was an interval of time between those dates in which
Arnold performed the functions of the office, and it is
argued that, therefore, he was necessarily a *de facto*
officer in the office created under the charter. To make
one a *de facto* officer, it is essential that he have color of
title thereto. Color of title is usually evidenced by a
certificate of election or appointment to the very office
claimed, neither of which Arnold had. While it is true,
color of title may exist when the acts of one assuming to
be such officer therein have long been acquiesced in as
official acts, the time elapsing after the judgment in the
*Cassiday* case became effective, and the appointment of
Hilts, however, is hardly sufficient for that purpose.
Moreover, it is always the duty of an incumbent holding
without a certificate of election or appointment, to sur-
render the office to one possessed of a certificate of election
or appointment. The certificate is the essential *prima
facie* evidence of the right to the office, and one without
it can not lawfully hold as against one claiming under it.
Nor can the former maintain an injunction against the
latter from entering upon the discharge of the official
duties. Such is the ruling of this court in the following
cases: *People, ex rel. v. District Court, supra; Lawson
v. Hays,* 39 Colo. 250; *People v. District Court,* 46
Colo. 1.

It does not follow, however, that the acts of Arnold
during the interval between the pronouncement in the
*Cassiday* case, and the appointment and qualification of
Hilts, are invalid. Under such circumstances, Arnold's
position was like unto those of one holding over after
the expiration of a term. There was no one legally en-

titled to the term in the office created under the charter.
Arnold entered and assumed to act therein. As no one
else was acting, or assuming to act, his acts were valid.
As held in *People v. DeGuelle*, 47 Colo. 13, 20, there was
a vacancy under the law, "though there was some one
actually and legally performing the duties of the office."
When Hilts was appointed and qualified to act, the term
was thereby filled, and the one theretofore performing the
duties of the office, neither continued longer in the office
nor to perform valid acts.

Suppose that after the majority opinion becomes
effective Hilts should institute *quo warranto* proceedings
against Arnold. The courts would doubtless hold, fol-
lowing the *Cassiday* case, that Arnold must be ousted,
as the office to which he was elected was abolished by the
constitutional amendment. The anomalous effect of the
holding herein would then be apparent. A court of equity
has exercised its power in protecting Arnold in the pos-
session of an office that has no existence, and compelling
the return to him of property which belongs only to an-
other existing office occupied by another incumbent.
Again, as "there can not be two different officers *de facto*
in possession of an office for which one incumbent only is
provided by law," 29 Cyc. pp. 1391, 1392, and Arnold
can only maintain this suit because he is a *de facto* officer
in possession, it follows that Hilts, under the majority
opinion, can not be a *de facto* officer. Because if Arnold
is a *de facto* officer, he is necessarily legally in possession
of the office entity and engaged in the performance of the
duties attached to it. It takes these elements to consti-
tute him a *de facto* officer. 29 Cyc., p. 1391. Now, the
law is, "that the mere possessor of an office, without these
other conditions, (being a *de facto* officer), is an intruder,
whose acts have legally no effect." 29 Cyc., p. 1392.

And then again, "there can not be a *de facto* officer if a *de jure* officer is discharging the functions of the office in question." 29 Cyc., p. 1931.

Applying these several rules of law to the facts of this case, we have this anomalous condition of things: Arnold maintains this suit because he is a *de facto* officer; Hilts, though actually performing the duties of the office, is a mere intruder whose acts have no legal effect, because "there can not be two different officers *de facto,* for which one incumbent only is provided by law," and the acts of a mere intruder have no legal effect. However, as Hilts, who may finally be determined to be the *de jure* officer, is actually performing the functions of the office under a certificate of appointment, and "there can not be a *de facto* officer if a *de jure* officer is discharging the functions of the office in question," 29 Cyc., p. 1391, Arnold is not a *de facto* officer and lacks an essential qualification to maintain this suit.

Finally, as Hilts undisputedly has a certificate of appointment to an office created by authority recognized under the constitution, and Arnold has no such authority to that office, and it is fundamental that injunction will not restrain a public officer from assuming to discharge the functions of his office, and it is said here that the things in controversy are simply incidents of the office, it would seem that this is not a proper case for injunction. Moreover, every consideration of public interest requires that the status now existing be maintained, unless it is clearly established that the public functions are not now being performed by one in whom proper authority to that end is vested. It is conceded in the pleadings that Hilts was actually performing the duties of the office at and prior to the institution of this suit, and it is a matter of common knowledge that public officials and the public

generally, dealing with him have recognized his acts as official. He has completed the assessment roll, extended the taxes and furnished the treasurer with his warrant for collection, constituting the authority of the latter official to collect state, county and city taxes, which the public are now paying. Moreover, section 5573, R. S. requires the assessor, or his deputy, on the first day of January in each year, or as soon thereafter as practicable, to call upon each inhabitant of his county at the residence or place of business of such inhabitant, and deliver or leave for him or her the proper blanks for the return of the property of such inhabitant for assessment. It then requires such inhabitant, upon the blank so furnished to make, under oath, and deliver to the assessor, between the first days of April and the twentieth day of May, a full and correct schedule and description of all the personal property of which such person was the owner on the first day of April of the current year. Other requirements as to other property held or controlled by such inhabitant are likewise exacted; all of this information, under oath, to be placed upon the blank so furnished by the assessor. As one-half the time has transpired in which to transact the official duty imposed as aforesaid, before the time in which the duty resting upon the inhabitant to make his return, commences, it would be proper to assume that the assessor is actually engaged in the transaction of such duty. However, such presumption need not be indulged, for it is a matter of common knowledge that Hilts and his deputies are now actually engaged in the transaction of such business, and thousands of such blanks, authenticated by Hilts as assessor, are now being distributed to, and left with the inhabitants of the city and County of Denver as the basis for the assessment for taxation for the year 1912. The acquiescence of the public, and the

courts, in the acts of Hilts as an official is further evidenced by a suit prosecuted against him in his official capacity, to prevent the extension of the so-called three mill tax levy for county purposes. While that suit was based upon the alleged invalidity of the three mill levy, upon the ground that it exceeded the charter limitation, the cause of action as set forth in the complaint, recognized Hilts as the assessor. If he were not the assessor, clearly his acts should necessarily be enjoined, and while that question was not directly presented, nevertheless, the case and the court, in a measure, at least, recognized Hilts as the asssessor. Not only was that suit so prosecuted in the district courts, but it was also brought to this court, and the validity of the levy recognized by a decision just rendered in *Hilts v. Market,* ante 382.

Again, when the district court in the case at bar, refused Arnold the relief for which he prayed, it approved, in a measure, the contention that Hilts was, at least, a *de facto* officer, and permitted him to continue performing public functions, which, if we are controlled by reason and precedent, are probably void, and necessarily so if Arnold is still in truth a *de facto* officer. It is not a question of advantage or disadvantage as between Arnold and Hilts. If Arnold is not the *de jure* officer, it profiteth him nothing to be re-instated, as it is only a *de jure* officer that is entitled to the salary. 29 Cyc., p. 1393. The question is, the rights of the public. If Hilts is the *de jure* officer, it is certainly an injustice to the public to remove him from office, throw distrust upon the legality of his acts, and bring confusion to public interests. If Hilts is the *de jure* officer and is removed, and Arnold restored, and thereafter upon *quo warranto* proceedings, Arnold is ousted and Hilts re-instated, the confusion and uncertainty in public affairs will, I fear, be

greatly augmented, and far-reaching in its evil effect. A principle usually recognized by courts of equity is, to require the doing of no useless or absurd thing. I can not help but feel that what the courts have done in this case, with what is likely to follow, constitutes an example of "the game of shuttlecock and battledore" judicially played.

As the facts are undisputed in the case before us, and present solely questions of law, I think this court should determine herein whether Arnold or Hilts is the *de jure* officer and pronounce judgment accordingly, or, in lieu thereof, affirm the judgment of the district court.

I am authorized to state that Mr. Justice Garrigues concurs in what I have herein said.